**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: Robert Vincent Newman,** | : | **Chapter 13** |
| **Debtor.** | : | **Bky. No. 25-13508 (PMM)** |
| **Robert Vincent Newman,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Adv. No. 25-0234 (PMM)** |
| **Customers Bank and LendKey Technologies, Inc.,** | : | |
| **Defendants.** | : | |

# O P I N I O N

## I. INTRODUCTION

Like many professionals, Robert V. Newman ("Mr. Newman" or "the Debtor") borrowed to pay for his education. Mr. Newman took out two (2) student loans: one (1) from the federal government for approximately $30,000.00 and one (1) from Defendant Customers Bank (serviced by Defendant LendKey Technologies, Inc.) for more than $222,000.00. Asserting that his current and projected income will not allow him to repay the loans without the imposition of an undue hardship, the Debtor filed this Adversary Proceeding seeking to discharge the loan owed to the private lenders pursuant to 11 U.S.C. §523(a)(8).[1]

Neither the Complaint nor the Amended Complaint elicited a response from either Defendant. The Defendants, in fact, remain silent, despite the fact that Mr. Newman filed and

[1] The Debtor does not seek to discharge his federal loan.

scheduled a Motion for Default Judgment (the "Motion"). An evidentiary hearing regarding the Motion was held and concluded on May 13, 2026. Only the Debtor participated in the hearing.

The uncontested evidence shows that the Debtor would, in fact, suffer an undue hardship if forced to repay his private loan balance. But, as discussed below, the Court determines that a third option - neither full repayment nor full discharge of the loan - is reasonable under these circumstances. Because the facts show that the Debtor is able to make some but not all of the monthly payments, a partial discharge will be granted. The Debtor must repay $40,000.00 owed to the Defendants; the remainder of the loan will be discharged.

## II. PROCEDURAL BACKGROUND

The Debtor filed for chapter 13 bankruptcy protection on September 3, 2025. This Adversary Proceeding was filed on November 21, 2025. Despite proper service of the Complaint and Amended Complaint by the Plaintiff, the Defendants did not answer. However, on February 2, 2026, the Court denied the Plaintiff's initial motion for default judgment because "the allegations contained in the Complaint, even if accepted as true, do not satisfy the standard in this Circuit for discharging student loan debt." Doc. #12 at 1. Following this denial, the Plaintiff filed an Amended Complaint, alleging in greater detail that the Plaintiff's circumstances warrant discharge of his student loan debt pursuant to 11 U.S.C. §523(a)(8).

Due to the Defendants' silence, the Plaintiff again sought default judgment, asserting that the standard for discharge pursuant to the test outlined in Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987) was met. Only the Debtor testified at the May 13, 2026 hearing.

## III. FINDINGS OF FACT

Based on the credibility of the witness and upon review of the relevant evidence and case docket, the Court makes the following findings of fact.

**Background**

1. The Debtor was 29 years old at the time of the hearing. Transcript of May 13, 2026 hearing ("Tr.") at 22.
2. Mr. Newman works as a Health Physicist, controlling the use of radiation, at Temple University Health System. Tr. at 8, 9.
3. The Debtor has worked in this field since 2022 and has been in his current position since 2025. Tr. at 8.

**Student Loans**

4. The Debtor lists two (2) unsecured student loans on his schedule E/F: one to Customers Bank and LendKey in the amount of $222,300.82 (the "Private Loan") and one to Mohela in the amount of $30,647.86 (the "Federal Loan").
5. The interest rate on the Private Loan is 5.5%. Schedule E/F.
6. The minimum payment due on the Private Loan is $1,652.74 per month. Doc. #14
7. The term of the Private Loan is approximately 16 to 17 years. Tr. at 6, 22.
8. LendKey, the servicer of the Private Loan for Customers Bank, offered the Debtor a temporary forbearance but will not reduce or change the terms of the loan due to hardship. Tr. at 19, 21.
9. The Debtor has not been able to refinance the Private Loan. Tr. at 19.
10. Mr. Newman did not miss a payment prior to filing for bankruptcy but would have defaulted on the loan if he had not sought bankruptcy protection. Tr. at 19-20.

11. The amount and nature of the Private Loan are sources of great stress for the Debtor. Tr. at 20-22.

**Chapter 13 Bankruptcy**

12. The Debtor's chapter 13 Plan, confirmed on May 26, 2026, is a 36-month plan, to be completed in 2029. Doc. #'s 29, 33 in the main case.
13. The Plan calls for the Debtor to pay $175.00 per month to cover attorneys' fees and the chapter 13 trustee commission. These are the only expenses paid through the chapter 13 Plan. Tr. at 7.
14. Two (2) proofs of claim were filed in the Debtor's bankruptcy: one (1) by the U.S. Department of Education/ MOHELA for the $30,576.86 Federal Loan, which is being paid through the federal Income-Driven Repayment program, and one (1) by Driveway Finance Corporation, for the Debtor's 2014 Honda Civic, which is being paid directly to the lender by the Debtor. Tr. at 7; Proof of Claims 1 and 2.
15. Besides his student loans, the Debtor has no unsecured debt.

**Job and Income**

16. The Debtor works as a Health Physicist at Temple University Health System and earns $70,000.00 per year, which amounts to $5,833.33 gross per month. Tr. at 8, 9. Schedule I. His take-home-pay is approximately $4,150.58 per month. Schedule I, doc. #9 in the main case.
17. The Debtor has worked at his current position at Temple since July 2025. Tr. at 8.
18. Mr. Newman is unsure if and when he will receive a raise at his current position. Tr. at 9.
19. The upper pay range for the Debtor's job is $85,000.00. Tr. at 9. In order to earn more than this, the Debtor would have to pursue a master's degree in health physics. Tr. at 12.

20. The Debtor's previous position paid $64,000.00 per year. Tr. at 9.

21. Mr. Newman has worked in this field since 2022 and plans to continue in the field. Tr. at 8, 12.

22. The Debtor studied physics and considers his current profession to be "within [his] field." Tr. at 9.

**Expenses**

23. The Debtor's monthly expenses amount to $3,974.33. Amended Schedule J.

24. This amount includes a payment on the federal student loan and a $500.00 monthly payment to counsel who represents the Debtor in this Adversary Proceeding.

25. The Debtor lives with his partner in a two (2) bedroom, one (1) bathroom townhouse and pays $650.00 per month in rent (which is less than half of the $1,700.00 rent). Tr. at 13, 16-18.[2]

26. Mr. Newman pays approximately $150.00 per month for utilities and internet and $450.00 to $500.00 for groceries. Tr. at 13, 15.

27. The Debtor's schedule J shows $125.00 per month spent on "clothing, laundry, and dry cleaning." However, the Debtor testified that he does not buy many new clothes. Tr. at 16.

28. Mr. Newman's medical expenses amount to between $50.00 and $100.00 per month. Tr. at 14.

29. The Debtor drives a 2014 Honda Civic with approximately 120,000 miles on it. Tr. at 14. He owes about $2,000.00 on the car; his payments are $230.00 per month. Id.

30. Mr. Newman expects he will need a new car in about five (5) years. Tr. at 15.

31. The Debtor pays about $167.00 per month on his Federal Loan. Tr. at 15.

---

[2] The Debtor's schedule J shows that he pays $550.00 in rent.

32. Mr. Newman spends approximately $200.00 per month on recreation, including a gym and martial arts subscription. Amended Schedule J.
33. The Debtor does not have a budget for new clothes or vacations. Tr. at 15–16.
34. He has $3.50 in his savings account. Tr. at 17.
35. Mr. Newman can afford $400.00 per month toward\ his Private Loan payment without significantly hindering his lifestyle. Tr. at 16–17.

## IV. LEGAL STANDARD

### A. Default Judgment Standard

Pursuant to Federal Rule of Civil Procedure 55(b), a default judgment may be entered against a party who fails to plead or otherwise defend. When considering a default judgment motion, the court may conduct hearings in order, among other things, to establish the truth of allegations contained in the complaint. Fed. R. Civ. P. 55(b)(2).

The first step in obtaining a default judgment is for the plaintiff to obtain a default. Fed. R. Civ. P. 55(a). Although the clerk "must enter" a default upon a defendant's failure to answer, even if the clerk of court enters default against a party, the court retains discretion to decide whether to enter a default judgment. See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000); Zurich Am. Ins. Co. v. Gutowski, 644 F. Supp. 3d 123, 132 (E.D. Pa. 2022).

Entry of a default judgment is usually appropriate where the defendant was properly served and fails to respond. United States v. Tran, 2022 WL 159734, at *2 (E.D. Pa. Jan. 18, 2022). Even so, the Debtor must satisfy the Court by making complete allegations in the complaint with regard to the relief sought. Scottsdale Ins. Co. v. Priscilla Properties, LLC, 254 F. Supp. 3d 476, 484 (E.D.N.Y. 2017) ("[A]lthough the entry of a default results in all well-pleaded factual allegations in the complaint being accepted as true, the Court must nevertheless

determine whether the complaint states a claim upon which relief may be granted."). If the allegations in the complaint satisfy the relevant standard, a court may choose to schedule an evidentiary hearing with regard to the merits of the allegations. See, e.g., In re Longo, 654 B.R. 1, 5 (Bankr. D. Conn. 2023); In re Brown, 539 B.R. 853 (Bankr. S.D. Cal. 2015).

Here, the Court denied the Debtor's first motion for default judgment, noting that "the allegations contained in the Complaint, even if accepted as true, do not satisfy the standard in this Circuit for discharging student loan debt." Order at doc. #12. The Plaintiff filed an Amended Complaint (doc. #14) as well as a new Motion for Default Judgment (doc. #20). As previously noted, the Debtor testified at the hearing on the renewed Motion. The Defendants, properly served with the Amended Complaint, chose not to participate in any aspect of the proceeding.

**B. §523(a)(8)**

Section 523(a)(8) of the Bankruptcy Code provides, in relevant part, that a discharge "does not discharge an individual debtor from any debt . . . unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. §523(a)(8). Congress enacted §523(a)(8) to foster "the twin goals of rescuing the student loan program from fiscal doom and preventing abuse of the bankruptcy process by undeserving debtors." In re Pelkowski, 990 F.2d 737, 743 (3d Cir. 1993); In re Kleckner, 560 B.R. 172, 176 (Bankr. E.D. Pa. 2016) (Frank, J.). Prevailing under §523(a)(8) requires the imposition of a "heightened standard" for the discharge of student loans, one that imposes a "heavy burden" on the debtor. In re Bridgeforth, 2022 WL 256787, at *1 (Bankr. M.D. Pa. Jan. 26, 2022).

The Third Circuit has adopted the Second Circuit's test outlined in Brunner v. New York State Higher Education Services Corp., 831 F.2d 395 (2d Cir. 1987) for determining undue

hardship. See In re Faish, 72 F.3d 298, 306 (3d Cir. 1995); In re Brightful, 267 F.3d 324, 327 (3d Cir. 2001); DeVos v. Price, 583 B.R. 850, 854 (E.D. Pa. 2018). According to the Brunner test, to establish undue hardship, a debtor must show:

> (1) that the debtor cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and (3) that the debtor has made good faith efforts to repay the loans.

The burden is on the debtor to establish all three (3) elements by a preponderance of the evidence; if the debtor fails as to any of the three (3) prongs, the inquiry ends, and the debt will not be discharged. In re Hendel, 669 B.R. 757, 761–62 (Bankr. E.D. Pa. 2025). The Brunner test is the "definitive, exclusive authority" that courts must use to make the undue hardship determination. In re Wolfson, 2022 WL 5055468, at *6 (Bankr. D. Del. Jan. 14, 2022); In re Faish, 72 F.3d at 306.

## V. DISCUSSION

### A. Minimal Standard of Living

The Brunner test first asks a court to consider a debtor's monthly budget. The upper limits of a required "minimal standard of living" generally allow for a debtor to purchase "the basic necessities, such as food, clothing, housing and medical treatment ... after providing for his or her basic needs, a debtor may not use her ... financial resources for discretionary expenditures in lieu of repaying student loan creditors." In re Hendel, 669 B.R. 757, 762–63 (Bankr. E.D. Pa. 2025). A mere showing of "tight finances" will not satisfy the debtor's high burden, especially if the debtor could make the loan payments by engaging in "short-term belt tightening." In re Faish, 72 F.3d at 306-07; In re Bailey, 2021 WL 2760039, at *4 (Bankr. D.N.J. June 30, 2021). But a debtor is not expected to live in abject poverty in order to repay a student loan. In re

Alston, 297 B.R. 410, 415 (Bankr. E.D. Pa. 2003); In re Ester, 657 B.R. 655, 668 n.64 (Bankr. N.D. Okla. 2024). A minimal standard of living is being able to pay for necessities but not too much more, "somewhere between poverty and mere difficulty." In re Doernte, 2017 WL 2312226, at *5 (Bankr. W.D. Pa. May 25, 2017) (citations omitted).

Specifically, the elements of a "minimal standard of living" are:

> (1) shelter that is furnished, clean, free of pests and climate-regulated with heating and cooling;
> (2) basic utilities such as electricity, water, gas and telephone;
> (3) food and personal hygiene products;
> (4) transportation or vehicles (and the ability to service and insure those vehicles);
> (5) life insurance and health insurance (or the ability to pay for medical and dental expenses);
> (6) modest recreation.

In re Ivory, 269 B.R. 890, 899 (Bankr. N.D. Ala. 2001); In re Bridgeforth, 2022 WL 256787, at *6 (Bankr. M.D. Pa. Jan. 26, 2022); In re Crawley, 460 B.R. 421, 436 (Bankr. E.D. Pa. 2011).

Here, Mr. Newman's expenses are minimal. The Debtor spends only $650.00 per month on rent while living in a city; his housing cost is essentially subsidized by his partner. Utilities and internet cost the Debtor about $240.00 per month. Mr. Newman drives a 12-year-old, high-mileage Honda and is working to pay off his car loan. He does not budget for car repairs. Mr. Newman's monthly entertainment expenses of about $200.00 (including membership at a martial arts gym and a cooking magazine subscription) are reasonable, considering that the Debtor is young and active. See In re Hargrave, 671 B.R. 94, 106 (Bankr. D. Kan. 2025) ("People must have the ability to pay for some small diversion or source of recreation, even if it is just watching television or keeping a pet."). The $200.00 per month spent on medical and dental expenses is also minimal, considering the high cost of health care. One of the Debtor's main expenses- $500.00 per month that he pays his student loan lawyer to pursue the relief sought here - is a

temporary, targeted expense. It does not appear from his schedules that Mr. Newman eats out, travels, or purchases many home or personal goods.

Review of this budget therefore causes the Court to conclude that the Debtor's expenses are, in fact, minimal. Simply put, there is no excess in the Debtor's budget. His standard of living allows for the basic expenses described above, but not more. Therefore, the budget does not allow for repayment of the loan to the Defendants; no amount of belt tightening would allow Mr. Newman to pay $1,652.74 per month to satisfy the Private Loan.

Consideration of the first prong of the Brunner test requires, however, a further inquiry: the Court must analyze whether the Debtor has maximized his income.[3] In re Faish, 72 F.3d 298, 307 (3d Cir. 1995); In re Longo, 654 B.R. 1, 13 (Bankr. D. Conn. 2023). The question of whether Mr. Newman could make more money is a tough call. The Debtor, who is 29 and earns $70,000.00 per year, credibly testified that the upper range of pay for his position is $85,000.00. This unrebutted testimony did not include an account of how this number was obtained or whether pay scales are similar in fields that employ the same skill set. The record is thus undeveloped with regard to whether the Debtor could raise his salary by looking for positions that would pay more. See In re Jones, 392 B.R. 116, 129 (Bankr. E.D. Pa. 2008) (citing cases for the proposition that prior to discharge of student loan debt, an under or unemployed debtor must seek employment opportunities in other fields).

An argument could thus be made that Mr. Newman should use his training to explore better paid options or that the Debtor should take on a second, part-time job. But the creditors

---

[3] Some courts analyze this question as part of the second or third prongs of the Brunner test. E.g. In re Murphy, 535 B.R. 97, 105 (Bankr. W.D. Pa. 2015); In re Hicks, 331 B.R. 18, 30 (Bankr. D. Mass. 2005). The distinction is without a difference; this issue must be taken up as part of a comprehensive Brunner analysis.

have not made that argument, and no evidence has been offered in favor of it. At bottom, it is not the Court's job to impose an employment plan on the Debtor. The relevant inquiry, rather, is whether the debtor has credibly shown "inability to pay in the present and a likely inability to pay in the future." In re Mendenhall, 621 B.R. 472, 489 (Bankr. D. Idaho 2020) (citation omitted). The Debtor offered sufficient and credible evidence that his minimal budget does not permit full repayment now or in the foreseeable future. The first element of the Brunner test is thus satisfied.

**B. The State of Affairs is Likely to Persist**

The second prong of the Brunner test requires a debtor to demonstrate that a hardship is "likely to persist for a significant portion of the repayment period." In other words, the debtor must demonstrate circumstances that show that the current state of economic distress is likely to persist for most of the repayment period. Brunner, 831 F.2d at 396. This second factor can itself be broken into two (2) elements: whether the debtor's financial difficulties are likely to continue and whether the hardship will be for a significant period of the repayment period. In re Crawley, 460 B.R. 421, 438 (Bankr. E.D. Pa. 2011).

This portion of the Brunner test is forward looking, questioning whether there is "definitive evidence that the Debtor's earning potential will not improve in the future." Crawley, 460 B.R. at 438. Circumstances tending to demonstrate that a debtor's current financial hardship will continue for a substantial period include "long-term physical or mental problems precluding employment, lack of marketable job skills, or the necessity of fully supporting several dependents which precludes sufficient income." In re Hendel, 669 B.R. 757, 763 (Bankr. E.D. Pa. 2025) (citing In re Speranzza, 366 B.R. 397, 411, 411 (Bankr. E.D. Pa., 2007)). "These [additional] circumstances need to be detailed and not based on assumptions." In re Williams,

296 B.R. 128, 134 (Bankr. D.N.J. 2003); In re Bailey, 2021 WL 2760039, at *5 (Bankr. D.N.J. June 30, 2021); see also Brightful, 267 F.3d 324 at 330 (holding that the bankruptcy court could not assume that because the debtor had psychological and emotional problems, she would be prevented from being gainfully employed, because no evidence was presented that showed the debtor's conditions would impair her ability to work); In re Flickinger-Luther, 462 B.R. 157, 162 (Bankr. W.D. Pa. 2012) (noting that this prong of the Brunner test places the Court in the “unenviable position” of having to predict the future).

The record here contains no evidence that the Debtor suffers from mental or physical impairments which will prevent him from working in the next decades. It can therefore be anticipated that the 29-year-old Debtor will be employed for the 16-to-17-year duration of the Private Loan. Further, as the Debtor gains professional experience and seniority, we can expect that his income will rise, probably at some point exceeding the current $85,000.00 salary cap for his position. The Debtor, to be sure, does not exhibit the kind of “financial hopelessness” that is the hallmark of many student loan discharge cases. In re Jones, 392 B.R. 116, 129 (Bankr. E.D. Pa. 2008).

And yet the future is of course unknown; perhaps the Debtor will develop a lucrative skill, discover a new investment, or take on a management role. However, equally or more likely is that the Debtor will incur additional and perhaps unforeseen expenses: the need for a new car, care and educational expenses for children, the mortgage and upkeep on a home, or increased medical and insurance costs. In other words, while the financial health and status of the Debtor over the next two (2) decades are far from certain, the most likely outcome is that increases in his income will be offset by increases in his (now minimal) budget.

This means, in turn, that the hardship the Debtor is experiencing with regard to his Private Loan repayment will likely continue for a significant period of that repayment period. Although a debtor's hopelessness or incapacity, sadly, would make this analysis easier, Mr. Newman does not need to prove that his future is bleak in order to satisfy prong two of the Brunner test. Rather "he need only prove that his future income will not allow him to both maintain a minimal standard of living and repay the [loan]. Something less than permanent unemployment, then, can suffice." In re Wolfson, 2022 WL 5055468, at *10 (Bankr. D. Del. Jan. 14, 2022). And the likelihood of Mr. Newman, whose current margin of disposable income is paper thin, being able to afford a $1,652.74 per month payment for the next 16 to 17 years is low. As Judge Frank noted in In re Crawley, 460 B.R. 421, 439 (Bankr. E.D. Pa. 2011), the best way to consider a debtor's future with regard to prong two of the Brunner test is to look to his past. Mr. Newman's financial history, while short, shows no signs that the Debtor will one day have sufficient funds to repay the Private Loan.

The Debtor presented unrebutted and credible evidence that the hardship imposed by the amount and duration of his Private Loan is likely to continue for a significant portion of the repayment period. Mr. Newman satisfies prong two of the Brunner test.

**C. The Debtor Made a Good Faith Effort**

With regard to whether the third prong of the Brunner test has been met, courts look at the debtor's good faith efforts to pay and the reasons for nonpayment. Specifically, courts examine a debtor's "efforts to obtain employment, maximize income and minimize expenses, and to undertake all other reasonable efforts to [e]nsure repayment." In re Park, 2026 WL 515406, at *3 (Bankr. D. Conn. Feb. 24, 2026) (citation omitted).

Also to be considered is the debtor's participation in income-based repayment plans. The significance of such repayment plans is "necessarily dependent on the circumstances of the particular debtor seeking discharge of his or her student loans." In re Wolfson, 2022 WL 5055468, at *11 (Bankr. D. Del. Jan. 14, 2022) (citation omitted) (allowing the loans to be discharged, noting that the Debtor was unlikely to pay down any meaningful amount of the student loan debt, and that the opposite conclusion would "do little to protect the integrity of the student loan system."). Unlike federal student loans, "private student loans offer no loss mitigation or rehabilitation options after acceleration." In re Longo, 654 B.R. 1, 18 (Bankr. D. Conn. 2023). Therefore, a repayment plan was not an option for Mr. Newman with regard to the Private Loan.

Here, the Debtor attempted to refinance or otherwise work with the lender on the terms of the Private Loan. See Findings of Fact 8, 9. These efforts were not successful. Mr. Newman did not miss a payment prior to filing but testified that the impending threat of default on the loan forced him to consider bankruptcy protection. Finding of Fact 10. These facts, as well as the Debtor's credible testimony that the amount of the looming student loan debt was highly stressful, cause the Court to conclude that the Debtor has acted in good faith. In re Crawley, 460 B.R. 421, 444 (Bankr. E.D. Pa. 2011) (noting that good faith is "essentially an inquiry into whether the debtor has consciously or irresponsibly disregarded his or her repayment obligation—or, instead, whether there is some justification for the debtor's default and ongoing inability to repay the loan.").

In making this determination with regard to the Debtor's good faith, the Court has considered the fact that the student loan debt that Mr. Newman seeks to discharge is essentially his only debt. The Debtor has no mortgage, credit card, personal or business loans, or health care

debt. He is paying his car loan outside of the bankruptcy. There is thus no question that treatment of the Private Loan was the sole reason for the filing of chapter 13 bankruptcy. Does this indicate that Mr. Newman is proceeding in bad faith? Student loans which constitute the majority of what is owed by a debtor may weigh against a finding of good faith. In re Murphy, 535 B.R. 97, 107 (Bankr. W.D. Pa. 2015). However, here the evidence presented indicates that the Debtor did not file under chapter 13 without careful consideration and sought bankruptcy protection as a last resort. The fact that the Debtor is not burdened by large amounts of unsecured debt or a home mortgage he cannot afford may well indicate not that Mr. Newman is simply careless with money, but that he failed to understand the enormous and practical ramifications of taking out large student loans. The evidence presented shows that the Debtor takes his debt seriously and that he has proceeded cautiously and honestly. Examination of the totality of the circumstances causes the Court to conclude that the Debtor is proceeding in good faith.

**D. Partial Discharge**

Analysis of the three (3) Brunner factors shows that repayment would cause an undue hardship for the Debtor. However, consideration of Mr. Newman's testimony and review of his budget also demonstrates that while repayment of the entire $222,300.82 is untenable, the Debtor can afford to make payments on the loan, even if not in the full amount. Finding of Fact 34. For this reason, and upon examination of the law allowing for such an outcome, the Court will grant the Debtor a partial discharge of his Private Loan. The Debtor must repay $40,000.00 of the Private Loan and the remainder will be discharged.

Although the Code does not expressly provide for partial discharge of student loan debt under §523(a)(8), many courts allow such relief under §105's grant of equitable authority. Several courts of appeals have permitted the remedy, provided that the debtor establishes undue

hardship as to the portion discharged. See, e.g., In re Alderete, 412 F.3d 1200, 1207 (10th Cir. 2005) (indicating that partial discharge of student loan debt is available if the Brunner undue hardship standard is met); In re Miller, 377 F.3d 616, 620 (6th Cir. 2004) ("a bankruptcy court may-pursuant to its § 105(a) powers-contemplate granting the various forms of relief discussed in *Hornsby,* including granting a partial discharge of the debtor's student loan"); In re Saxman, 325 F.3d 1168, 1174 (9th Cir. 2003) ("it is now generally recognized that an all-or-nothing approach to the dischargeability of student debt contravenes Congress' intent in granting bankruptcy courts equitable authority to enforce the provisions of the Bankruptcy Code"); In re Hornsby, 144 F.3d 433, 438-9 (6th Cir. 1998) (finding that bankruptcy courts have power under 11 U.S.C. § 105(a) to "take action short of total discharge.").

Many lower courts have followed this approach. In re Hargrave, 671 B.R. 94 (Bankr. D. Kan. 2025) (citing authority); In re Randall, 628 B.R. 772, 786–87 (Bankr. D. Md. 2021) (determining loan amount that is nondischargeable requires evaluation of the Brunner factors); In re Mendenhall, 621 B.R. 472, 492 (Bankr. D. Idaho 2020) ("[t]he discharge of student loans is not an all or nothing proposition"); In re Reed, 2005 WL 1398479, at *1 (Bankr. D. Vt. June 13, 2005) (holding that bankruptcy courts have equitable power to discharge a portion of a student loan obligation); In re Lohr, 252 B.R. 84, 89 (Bankr. E.D. Va. 2000) (stating that a "wide majority" of courts allow a partial discharge).[4] Still, the "issue of whether partial discharge is available under §523(a)(8) has proved vexing to the judiciary . . . ." In re Grigas, 252 B.R. 866, 870 (Bankr. D.N.H. 2000).

---

[4] Some courts take a "hybrid approach," examining each loan individually and allowing for the possibility that some but not all of a debtor's student loans may be discharged. E.g. In re Lamanna, 285 B.R. 347, 354 (Bankr. D.R.I. 2002).

The Third Circuit has not addressed the question. Although one of the issues on appeal in In re Faish, 72 F.3d 298 (3d Cir. 1995) was whether the bankruptcy court's allowance of a partial student loan discharge should be upheld, the Third Circuit decided the case on other grounds in holding that the debtor had failed to meet the Brunner standard. Therefore, "[t]he question remains open whether Faish could have obtained a partial discharge if she had otherwise met the Brunner test." In re Rumer, 469 B.R. 553, 564 n.12 (Bankr. M.D. Pa. 2012).

At least one court in the Third Circuit has concluded that partial discharge should not be allowed. See, e.g. In re Allen, 329 B.R. 544, 549–50 (Bankr. W.D. Pa. 2005) (concluding that a court may not discharge part of a single educational loan but may analyze each loan separately). Allen is not binding precedent and the Court declines to follow it.

Rather, the Court looks to a case on all fours with ours. In re Longo, 654 B.R. 1 (Bankr. D. Conn. 2023) also considered a motion for default judgment where the creditor declined to participate or object in a §523(a)(8) proceeding. Mr. Longo received an undergraduate degree in music, which he funded with an $18,000.00 federal loan and $95,000.00 private loan (in addition to a $53,000.00 loan that his mother took out in her name). Failing to find a position in the music industry, the debtor worked as a lighting technician, earning an annual salary of less than $53,000.00. After analyzing the Brunner factors and considering the critical fact that the creditor did not offer any counter-evidence, the Court granted a partial discharge:

> The Debtor has sufficiently met all three prongs of the *Brunner* test and established undue hardship as to the fully accelerated balance of the [loans] in light of [defendant's] failed responsiveness to the Debtor's modest efforts to explore a consensual income-based restructuring. The full satisfaction of the accelerated [loans] is not feasible in the short or intermediate term without significant financial hardship that would severely threaten the Debtor's future job prospects and income growth, as well as his ability to live independently, while maintaining a minimal standard of living. The Debtor is therefore entitled to a partial discharge of the [loans].

In re Longo, 654 B.R. 1, 21 (Bankr. D. Conn. 2023). See also In re Modeen, 586 B.R. 298, 306 (Bankr. W.D. Wis. 2018) (partial discharge of student loan debt granted to young, employed debtor; "[g]iven her age and earning potential, the Court finds Defendant could reasonably repay some portion of the loan.").

The same analysis applies to the facts of this case. As discussed, repayment of the entire (very large) Private Loan would impose an undue hardship on the Debtor. And yet, the Debtor readily admits that he can afford some payment on the debt. Finding of Fact 35; original Complaint at ¶16. Given that the Debtor testified that he can pay $400.00 per month toward the Private Loan and that the $500.00 per month payment to the lawyer representing him with regard to this Adversary Proceeding will soon be eliminated, the Court determines that $40,000.00 of the Private Loan will remain nondischargeable. This figure represents a rough calculation of what the Debtor may reasonably be expected to pay over the remaining 16- to 17-year term of the Private Loan. See In re Hollins, 286 B.R. 310, 316 (Bankr. N.D. Tex. 2002) (in determining a partial discharge, the court considers "the period of time it would take the debtor to repay the entire loan, the monthly amount needed to pay the loan, and the interest rate.")

The Court acknowledges that the language of §523(a)(8) and Brunner instruct that the elimination of student loan debt is disfavored. In re Jones, 495 B.R. 674, 678 (Bankr. E.D. Pa. 2013) (noting that the test places a "heavy burden" on the Debtor"); In re Sperazza, 366 B.R. 397, 408 (Bankr. E.D. Pa. 2007) ("[t]he undue hardship standard is difficult for an individual debtor to meet"). In reaching the conclusion that the Debtor should be allowed to discharge a portion of his immense loan burden, the Court focuses on the equities which "tip distinctly in favor of the debtor." In re Boyd, 254 B.R. 399, 405 (Bankr. N.D. Ohio 2000). As discussed, the near impossibility of repayment of the entire Private Loan would loom large over Mr. Newman's

life, preventing the proverbial "fresh start." However, the discharge of most, but not all, of the Private Loan means that the Debtor can rid himself of this intractable financial burden while still requiring meaningful repayment of the debt he chose to incur.

Further, to be clear, this conclusion rests on the fact that the Defendants chose not to participate in this proceeding or to offer evidence contrary to that of the Debtor.

**E. Policy Consideration**

In reaching the determination that the Debtor should be permitted to discharge a portion of his student loan debt, the Court has considered the facts of this case and also the broader policy implications of allowing a young, healthy borrower to forgo repayment of debt that he incurred knowingly and voluntarily. The discharge offered in bankruptcy is of course an exception to the general rule of law "that contractual commitments are to be honored." In re Doernte, 2017 WL 2312226, at *1 (Bankr. W.D. Pa. May 25, 2017).

Congress chose to implement §523(a)(8) in order to make discharge of student loans difficult. In re Goodvin, 2020 WL 6821867, at *11 (Bankr. D. Kan. Sept. 1, 2020), aff'd sub nom. Educ. Credit Mgmt. Corp. v. Goodvin, 2021 WL 1026801 (D. Kan. Mar. 17, 2021) (explaining that § 523(a)(8 seeks to prevent students from discharging educational debt immediately after graduation.); In re Boyd, 254 B.R. 399, 403 (Bankr. N.D. Ohio 2000) ("The underlying policy [of §523(a)(8)] was the perceived need to rescue the student loan program from potential insolvency and also to prevent abuse of the bankruptcy system by students who finance their higher education through the use of government guaranteed loans, but later file bankruptcy petitions for the purpose of discharging their educational debt."); In re Frushour, 433 F.3d 393, 399 (4th Cir. 2005) (citation omitted) (stating that the student loan program "affords individuals in all walks of life the opportunity to obtain an education. . . without the program,

many people would never receive any higher education, because their credit risks would preclude them from obtaining private commercial loans.”).

Mr. Newman is not seeking to discharge his Federal Loan, so the relief granted does not directly affect a federally held loan. A discharge of private debt nevertheless imposes costs on the lender, and those costs will presumably be passed on to future borrowers. It is certainly possible that the Defendant lenders remain absent because they have already incorporated those costs into their financial equation. In other words, the offer of exorbitant amounts to student borrowers may just be a baked-in element of the bizarre student loan system in this country.

At a minimum, many questions remain unanswered: Where did the Debtor go to college? Why did Mr. Newman choose to incur a staggering amount of student loans (more than $250,000.00) without having an informed and viable plan to repay the loans? Did the Debtor, prior to incurring these loans, consider a repayment calculation or the average salary in his expected field? Why did the Defendants lend so much so that the Debtor could obtain a degree in a field with earnings insufficient to service the debt? Why did the lenders not object to the relief sought here? Without a response from the Defendants, the Court is forced to decide the Motion without answers to these questions and on the thinnest of evidentiary records. A more robust record may have revealed that Mr. Newman is in fact able to pursue a higher paying job, a more lucrative career with the degree he has, or a second job. Such evidence may have shown that the Debtor in fact does not meet the Brunner standard of undue hardship. But no such evidence has been presented.

The Court further acknowledges the argument that partial discharge of the Private Loan contravenes the purpose of §523(a)(8). Many student loan borrowers, after all, face more than simple “belt tightening” in an effort to repay the cost of their education, a cost which is high and

only getting higher. If every borrower were allowed to discharge burdensome student-loan debt, the opportunity to fund one's education *ex post* may cease to exist. Further, the risk of being buried in debt for the rest of his life was one which the Debtor should have foreseen when he borrowed more than a quarter of a million dollars in order to pursue a degree in a field where the high salary is less than $100,000.00.

But the law does acknowledge that some student loan debtors are "in true need of bankruptcy relief." In re Boyd, 254 B.R. 399, 403 (Bankr. N.D. Ohio 2000). Mr. Newman, who has shown that he cannot repay the full balance of his Private Loan without undue hardship, is one such debtor. The record shows that, without the benefit of bankruptcy protection and the relief achieved in this Adversary Proceeding, the Private Loan would soon go into default and likely cause the lender to accelerate the loan and seek collection. The Debtor's credit would likely be damaged. Under these circumstances, it is difficult to fathom how Mr. Newman, already working full-time and spending little money, would recover financially or realize the fresh start that bankruptcy for the honest debtor promises. The Court reaches its decision based not on policy concerns but on the specific facts presented.

Repayment of the $40,000.00 that will remain nondischargeable is, to be sure, a small percentage of what Mr. Newman borrowed. At the same time, repayment of this portion of the loan will impact the Debtor's lifestyle and choices. Paying a portion may not be an "undue hardship," but it will be plenty hard.

## VI. CONCLUSION

This case presents a tough call, made tougher by the absence of the Defendants and the paucity of evidence. Although the analysis of the Motion for Default Judgment is "necessarily

one-sided," the credibility of the Debtor and the evidence of his current and projected financial hardship lead the Court to conclude that repayment of the entire enormous Private Loan would impose an undue hardship on the Debtor. United States v. Tran, 2022 WL 159734, at *2 (E.D. Pa. Jan. 18, 2022). Yet there is some room here for repayment. The Court follows the line of decisions allowing for partial discharge of student loan debt, rejecting the principal that §523(a)(8) mandates a draconian "all or nothing" approach. The Debtor must pay less than a quarter of his private loan, a comparatively small share that remains a substantial obligation. The question of why the Debtor chose to take on such a large amount of debt and why the lender chose to lend this sum is one for another day and another forum.

Patricia M. Mayer

**Date:** September 8, 2026

______________________________
**PATRICIA M. MAYER**
**U.S. BANKRUPTCY JUDGE**